**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-00054-JRG-RSP |
| | ) | |
| VOLKSWAGEN AG et al, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR IMPROPER VENUE AND
<u>FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

I. INTRODUCTION: ARIGNA FAILED TO MEET ITS BURDEN ON VENUE AND STATING A CLAIM, REQUIRING DISMISSAL OF THIS COMPLAINT .................. 1

II. BACKGROUND: ARIGNA'S VENUE ALLEGATIONS POINT ONLY TO NON-PARTY LOCATIONS IN THE EASTERN DISTRICT OF TEXAS .............................. 2

    A. BMW NA Resides in Delaware and Has No Physical Facilities in This District.......... 3

    B. BMW NA Does Not Own or Control Independent Dealerships .................................... 3

    C. BMW NA Has Arms-Length Contractual Relationships with the East Texas Dealerships, Nothing More. .................................................................................. 4

    D. The East Texas Dealerships Control Themselves and Their Facilities......................... 6

III. ARGUMENT 1: VENUE IS IMPROPER IN THIS DISTRICT ............................................. 8

    A. The Narrow Patent Venue Standard and Plaintiff's Burden to Meet It. ...................... 8

    B. BMW NA Does Not "Reside" in Texas......................................................................... 9

    C. BMW NA Has No "Regular and Established Place of Business" Here........................ 9

        1. The East Texas Dealerships Are Not Alter Egos of BMW NA........................ 10

        2. Absent an Alter-Ego Relationship, Distributors Like the East Texas Dealerships Cannot Create Venue over Unrelated Corporate Entities. ................................................................................................... 11

        3. When Corporate Formalities Are Observed, One Corporate Entity Cannot "Ratify" a Place of Business Owned, Operated, and Controlled by Another Separate and Distinct Entity. .............................. 15

            a. *Omega* rejects BMW NA's alleged "ratification" of dealerships. ........ 16

            b. *West View* rejects BMW NA's alleged "ratification" of dealerships................................................................................. 18

            c. *Board of Regents* rejects "ratification" theory. ..................................... 18

        4. The East Texas Dealerships Are Not Agents of BMW NA, and the Dealer Agreements Do Not Create an Agency Relationship.................... 19

            a. BMW NA does not, and cannot, direct or control the East Texas Dealerships' actions. ................................................................... 20

b. BMW NA does not manifest consent that the East Texas
Dealerships should act on its behalf.............................................. 22

c. The East Texas Dealerships Control Themselves, and Act on
Their Own Behalf. ........................................................................ 23

5. Providing a Warranty Does Not Create Venue................................... 23

IV. ARGUMENT 2: ARIGNA FAILS TO STATE A CLAIM FOR INFRINGEMENT .......... 24

A. Rule 12(b)(6) and the *Iqbal*/*Twombly* Pleading Standard............................................ 24

B. Arigna's Direct Infringement Claims Against BMW NA Should Be Dismissed
Under Rule 12(b)(6) for Failure to State a Claim. ................................................. 25

1. Arigna's Direct Infringement Claims Relating to the '318 Patent Fail to
Plead Sufficient Factual Allegations......................................................... 25

2. Arigna's Direct Infringement Claims Relating to the '867 Patent Fail to
Include Sufficient Factual Allegations...................................................... 27

C. Arigna's Indirect Infringement Claims Against BMW NA Should Be
Dismissed Under Rule 12(b)(6) for Failure to State a Claim. ............................. 29

V. CONCLUSION: VENUE IS IMPROPER AND ARIGNA STATED NO CLAIM .............. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev., LLC v. ZTE Corp.*,
  Case No. 2:17-cv-517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ......................8, 24

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) .................................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................25, 29

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
  No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018) ...........................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................24, 25

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*,
  C.A. No. 2:17-cv-418-JRG, Dkt. 90 (E.D. Tex. Sept. 6, 2018)..............................................17

*Board of Regents v. Medtronic PLC*,
  No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018) ...............................18

*Boston Sci. Corp. v. Cook Grp. Inc.*,
  269 F. Supp. 3d 229 (D. Del. 2017).......................................................................................12

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
  406 U.S. 706 (1972)...............................................................................................................10

*Cannon Manufacturing Co. v. Cudahy Packing Co.*,
  t 267 U.S. 333 (1925).............................................................................................................13

*CAO Lighting, Inc. v. Light Efficient Design*,
  No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ........................................12

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)............26, 27, 28, 29

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ........................30

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017)....................................................................................... *passim*

*Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*,
  531 F.2d 1382 (7th Cir. 1976) ........................................................................12

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
  No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)................. *passim*

*Ford Motor Co. v. Miles*,
  967 S.W.2d 377 (Tex. 1998)...........................................................................21

*Fourco Glass Co. v. Transmirra Products Corp.*,
  353 U.S. 222 (1957).......................................................................................10

*Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*,
  No. 17-cv-01803, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017) ..........................12

*Freecycle Sunnyvale v. The Freecycle Network*,
  652 F.3d 509 (9th Cir. 2010) ..........................................................................21

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)........................................................................30

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
  290 F. Supp. 3d 599 (N.D. Tex. 2017) ............................................................12

*General Motors Corp. v. Washington*,
  559 S.W.2d 425 (Tex. Civ. App. 1977) ............................................................21

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020).............................................................8, 17, 19, 20

*Grantham v. Challenge-Cook Bros.*,
  420 F.2d 1182 (7th Cir. 1969) ........................................................................12

*Green Fitness Equip. Co., LLC v. Precor Inc.*, Case No. 18-cv-00820-JST, 2018
  WL 3207967 (N.D. Cal. June 29, 2018) ...........................................................13

*Hildebrand v. Wilmar Corp.*,
  No. 17-cv-02821, 2018 WL 1535505 (D. Colo. Mar. 29, 2018) ...........................12

*Interactive Toybox v. Walt Disney Co.*,
  Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018)................11, 15

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
  No. 3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017).......................12

*Knapp-Monarch Co. v. Casco Prods. Corp.*,
  342 F.2d 622 (7th Cir. 1965) ....................................................................10, 24

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ....................................9

*LoganTree LP v. Garmin Int'l, Inc.*,
  No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) .........................12

*Magnacoustics, Inc. v. Resonance Tech. Co.*,
  132 F.3d 49 (Fed. Cir. 1997)..................................................................................................8

*Manville Sales Corp. v. Paramount Sys. Inc.*,
  917 F.2d 544 (Fed. Cir. 1990)..............................................................................................11

*Meyer v. Holley*,
  537 U.S. 280 (2003)..............................................................................................................20

*National Steel Car Ltd. v. Greenbrier Co., Inc.*,
  Civil Action No. 6:19-cv-00721-ADA, 2020 WL 4289388 (W.D. Tex. July
  27, 2020) ........................................................................................................................11, 15

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
  No. 6:13-cv-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) ................................30

*Omega Patents, LLC v. Bayerische Motoren Werke AG*,
  No. 1:30-cv-01907-SDG, 2020 WL 8184342 (N.D. Ga. Dec. 21, 2020) ..............16, 17, 18, 19

*Patent Holder LLC v. Lone Wolf Distribs., Inc.*,
  No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ..........................................12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  843 F.3d 1315 (Fed. Cir. 2016).............................................................................................30

*Reflection, LLC v. Spire Collective LLC*,
  No. 17-cv-1603, 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) ...........................................12, 16

*Schnell v. Peter Eckrich & Sons, Inc.*,
  365 U.S. 260 (1961)................................................................................................................8

*Shapiro v. Ford Motor Co.*,
  359 F. Supp. 350 (D. Md. 1973) ...........................................................................................12

*Soverain IP, LLC v. AT&T, Inc.*,
  No. 2:17-cv-293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017),
  *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18,
  2017) ..............................................................................................................................11, 13

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
  282 F. Supp. 3d 916 (E.D. Va. 2017) ................................................................................12, 15

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ...................................................................................1, 8, 9, 13

*Tech. Software, Inc. v. RTV, Inc.*,
   377 F. Supp. 3d 195 (E.D.N.Y. 2019) ..................................................................17

*Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.*,
   No. 17-cv-147(KAM)(CLP), 2020 WL 1694490 (E.D.N.Y. Apr. 7, 2020) ....................16, 17

*Vaxcel Int'l Co. v. Minka Lighting, Inc.*,
   No. 18 CV 0607, 2018 WL 6930772 (N.D. Ill. July 11, 2018) ........................13, 19

*West View Research, LLC v. BMW of N. Am., LLC*,
   Case No. 3:16-cv-02590-JLS-AGS, Dkt. 61 (S.D. Cal. Dec. 15, 2017).................18

*Westech Aerosol Corp. v. 3M Co.*,
   927 F.3d 1378 (Fed. Cir. 2019)...........................................................................14

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
   No. CV H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) .......................12

*Zaxcom, Inc. v. Lectrosonics, Inc.*,
   No. 17-cv-3408-NGG-SJB, 2019 WL 418860 (E.D.N.Y. Feb. 1, 2019) .........................16, 17

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)........................................................................1, 8

**Federal Statutes**

28 U.S.C. § 1400(b) ...................................................................................... *passim*

28 U.S.C. § 1406...................................................................................................2

35 U.S.C. § 271(a) ..............................................................................................30

35 U.S.C. § 271(b) ..............................................................................................30

35 U.S.C. § 271(c) ..............................................................................................30

**State Statutes**

Texas Occ. Code Ann. § 2301.476(c)........................................................6, 11, 21

Texas Occupations Code.................................................................................1, 6

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ...............................................................1, 9

Federal Rule of Civil Procedure12(b)(5) .............................................................................1

Federal Rule of Civil Procedure12(b)(6) ...................................................................... *passim*

**Other Authorities**

Restatement (Third) of Agency § 1.01 ...............................................................20

Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.) ......................................................11

## <u>STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)</u>

1) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 for improper venue because Defendant BMW of North America, LLC does not reside in this District, and has not committed alleged acts of infringement and does not have a regular and established place of business in this District, as required to support venue under 28 U.S.C. § 1400.

2) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff Arigna Technology Limited's First Amended Complaint fails to state a claim upon which relief can be granted.

## I.  INTRODUCTION: ARIGNA FAILED TO MEET ITS BURDEN ON VENUE AND STATING A CLAIM, REQUIRING DISMISSAL OF THIS COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), BMW of North America, LLC ("BMW NA") moves to dismiss the First Amended Complaint (the "FAC") of Plaintiff Arigna Technology Limited ("Arigna") for improper venue and failure to state a claim.[1]

***First***, none of Arigna's allegations regarding venue relate to any physical presence by BMW NA in the Eastern District of Texas—because it has none. Instead, Arigna's venue-related allegations concern independent dealers of BMW vehicles which are separate and distinct entities from BMW NA. Such independent, unaffiliated dealers cannot establish venue as to BMW NA.

After *TC Heartland LLC v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017), and the Federal Circuit's subsequent interpretations of the patent-venue statute in *In re Cray,* 871 F.3d 1355 (Fed. Cir. 2017), and *In re ZTE (USA) Inc.,* 890 F.3d 1008 (Fed. Cir. 2018), the law is clear that it is the plaintiff's burden to establish that venue is appropriate either (1) where a domestic defendant is incorporated or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Since BMW NA is incorporated in Delaware (and thus resides there), Arigna must establish that BMW NA has a "regular and established place of business" in this jurisdiction. It has not done so, and cannot do so.

The only locations in the Eastern District of Texas that Arigna points to as establishing venue over BMW NA are independent dealerships owned and controlled by independent entities, consistent with the Texas Occupations Code. Federal courts around the country—including this District—have overwhelmingly held that independent entities separate and distinct from the

---

[1] This motion to dismiss is brought by BMW NA only, and though Bayerische Motoren Werke AG ("BMW AG") separately has moved to dismiss for insufficient service under Rule 12(b)(5), BMW NA's and BMW AG's arguments under Rule 12(b)(6) are the same.

defendant cannot be the venue-anchoring places of a non-resident defendant, absent an alter ego relationship or veil piercing. Two federal district courts have already addressed this issue with respect to BMW NA specifically, both finding venue improper because BMW NA had not "ratified" in-district BMW dealerships as its own places of business. Because there are no places of BMW NA in this District—only places of independent dealers who are *not* BMW NA—Arigna cannot establish venue over BMW NA, requiring dismissal of the FAC. *See* 28 U.S.C. § 1406.

*Second*, the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim. Arigna's FAC contends, regarding direct infringement, that certain BMW products incorporate third-party chipsets/insulated-gate bipolar transistor ("IGBT") devices that infringe the asserted claims. However, aside from reciting the claim language word-for-word, the FAC contains insufficient factual allegations to establish that the identified BMW products actually use the third-party chipsets/IGBT devices, let alone how such chipsets/IGBT devices actually infringe any asserted claims. As a result, the FAC fails to provide factual allegations to serve as fair notice of any plausible claim of infringement.

## II. BACKGROUND: ARIGNA'S VENUE ALLEGATIONS POINT ONLY TO NON-PARTY LOCATIONS IN THE EASTERN DISTRICT OF TEXAS

Arigna accuses BMW NA[2] of infringing U.S. Patent Nos. 7,397,318 and 8,247,867 by selling certain vehicles that allegedly incorporate particular semiconductor devices used in auto parts, such as radar and/or power modules designed for hybrid and electric vehicles. *See* FAC, ¶¶ 143-152; 222-236. Arigna's FAC contains 15 paragraphs of conclusory declarations about BMW NA that pertain to venue, none of which alleges that BMW NA itself has a place of business in the Eastern District of Texas ("E.D. Tex."). *See id.,* 19-33. Instead, Arigna only points to independent,

---

[2] BMW AG and BMW NA are collectively referred to as "BMW" in the FAC. *Id.*, ¶ 20.

third-party dealerships. But none of Arigna's claims show that the dealerships are BMW NA's alter egos, and thus the dealerships cannot establish venue over BMW NA.

### A. BMW NA Resides in Delaware and Has No Physical Facilities in This District

Because BMW NA is not incorporated in Texas, it does not "reside" there for purposes of patent venue. As Arigna correctly alleges, BMW NA is a Delaware limited liability company that imports and distributes BMW- and MINI-branded motor vehicles and vehicle service parts to independent resellers (called "dealers," "dealerships," or "centers") throughout the United States. FAC, ¶¶ 19, 22; Declaration of Chris Tedesco ("Tedesco Decl."), ¶ 2. BMW NA maintains its corporate headquarters in Woodcliff Lake, New Jersey. Tedesco Decl., ¶ 2. Arigna further alleges that "[o]n information and belief, BMW NA has hundreds of employees based in and does business across the State of Texas, including at the Vehicle Distribution Center in Galveston and the Parts Distribution Center in Lancaster." FAC, ¶ 19. But Galveston is in the Southern District of Texas, while Lancaster is in the Northern District of Texas. In reality, BMW NA's only employees in Texas work outside the E.D. Tex., and BMW NA's only physical places of business in Texas are located outside the E.D. Tex. Tedesco Decl., ¶ 8. BMW NA has no facilities, offices, employees, or assets located anywhere in the E.D. Tex. *Id.*, ¶ 2.

### B. BMW NA Does Not Own or Control Independent Dealerships

Arigna admits that BMW NA does not sell its products directly to consumers in the E.D. Tex.; instead, BMW NA sells "exclusively" to "authorized BMW dealers" in the District. FAC at ¶ 22; Tedesco Decl., ¶ 3. There are six independently-owned-and-operated dealership entities in the E.D. Tex. (collectively, the "East Texas Dealerships"). *See* Tedesco Decl., ¶ 3. When BMW NA sells vehicles to the East Texas Dealerships, the Dealerships take title to the vehicles at ports located outside the E.D. Tex. and before they are shipped to the Dealership facilities. *Id.*, ¶ 11. Thus, all BMW and MINI brand vehicles on the lots of the East Texas Dealerships were brought

into the E.D. Tex. by the Dealerships and are the property of the Dealerships, not BMW NA. *Id.*

The East Texas Dealerships are owned and operated by the following individuals and/or entities—

not BMW NA, *see* Tedesco Decl., ¶ 3:

| Dealer Entity | Owner(s) | Dealer Operator |
|---|---|---|
| Classic Cars, LP, d/b/a Classic BMW | ██████████ | ████ |
| Mike Smith Imports, Inc., d/b/a BMW of Beaumont, | ████████ | ██████████ ████████ |
| Nortex Motorsports, Inc., d/b/a BMW Motorcycles of Denton | ████████ | █████████ |
| Retail Motorcycle Ventures, Inc., d/b/a BMW Motorcycles of North Dallas | ███ | ███ |
| Classic Cars, LP, d/b/a MINI of Plano | █████ | ████ |
| Waterside Investments, Inc., d/b/a BMW of Tyler | ██████████ | ████ |

BMW NA does not have any direct or indirect ownership interest in any of the East Texas

Dealerships, and none of their owners or operators are employees or agents of BMW NA. *Id.*

### C. BMW NA Has Arms-Length Contractual Relationships with the East Texas Dealerships, Nothing More.

The relationship between BMW NA and the East Texas Dealerships is contractual. Each

Dealership purchases, resells, and services BMW NA's products pursuant to the terms of a contract

(a "Dealer Agreement") with BMW NA. Tedesco Decl., ¶ 4 & Exs. A-G. The East Texas Dealerships are not agents of BMW NA and may not hold themselves out as such. *Id.* at Ex. G (Standard Provisions), ¶ 18(f) ("Center is not an agent of BMW NA, and BMW NA owes no fiduciary duty to Center. Center will conduct its BMW Vehicle Operations on its own behalf and for its own account. Center has no power or authority to act for or to bind BMW NA and/or BMW and shall not represent directly, indirectly, or by implication that the Center has any such power or authority."); Exs. E-F (motorcycle Dealer Agreements), ¶ 14.06 ("Dealer is not the agent or legal representative of BMW or BMW NA for any purpose whatsoever. . . ."). Also, each Dealership may terminate its relationship with BMW NA at any time, on 60-days' notice, and do whatever it wishes with its own property—irrespective of BMW NA's wishes because BMW NA does not control the property. Tedesco Decl., ¶ 6; *see also, id.* at Ex. G (Standard Provisions), ¶ 12(a); Exs. E-F (motorcycle Dealer Agreements), ¶ 11.01.

Arigna alleges that the East Texas Dealerships "are regular, continuous, and established physical places of business of Defendants BMW, being established, ratified, and/or controlled by BMW as authorized dealers," that BMW "has consented to [the East Texas Dealerships] acting on BMW's behalf," and that the East Texas Dealerships "have consented to act on BMW's behalf pursuant to the [alleged] terms of control and direction." FAC, ¶¶ 22, 33. These conclusory claims are wrong. *See generally* Tedesco Decl. As the Dealer Agreements state, the East Texas Dealerships are not BMW NA's agents; rather, they are independent businesses that have chosen to purchase, resell, and service BMW products pursuant to arms-length contracts they entered into voluntarily, from which they benefit financially and are free to terminate at any time. *See* Tedesco Decl., ¶ 6. The Dealerships' facilities are not "ratified" as facilities of BMW NA. *Id.*

**D. The East Texas Dealerships Control Themselves and Their Facilities**

Each East Texas Dealership selected its own geographical location and provided its own facility at which the Dealership would sell and service BMW NA products, Tedesco Decl., ¶¶ 9, 12. The Dealerships themselves own, lease, or otherwise control these facilities and sought the business opportunity to purchase, sell and service BMW products from those locations; BMW NA granted those rights in accordance with the Dealer Agreements. *Id*. Moreover, contrary to Arigna's allegations, no East Texas Dealership has exclusive rights to sell or service BMW vehicles within any geographic area (indeed, as stated above, there are multiple vehicle and motorcycle Dealerships competing within the E.D. Tex.), nor is any Dealership's sale or service of BMW vehicles restricted to specific customers within a specific area. *Id.*, ¶ 9.

Consistent with the Dealer Agreements and the Texas Occupations Code, which prohibits BMW NA from owning, operating, or controlling independent dealerships in Texas, *see* Texas Occ. Code Ann. § 2301.476(c) (the "TOC"), BMW NA does not claim or represent that it owns, operates, or controls any of the East Texas Dealerships. *See* Tedesco Decl., ¶ 7. On its website, BMW NA identifies the East Texas Dealerships for what they are: authorized retail "dealerships" or "centers" where consumers can obtain BMW NA products and services for those products. *Id.*, ¶ 10. While BMW NA advertises and promotes the BMW® and MINI® brands, its advertising (including its website, www.bmwusa.com) directs consumers to visit local (independent) dealers to test drive, purchase, and take possession of BMW NA vehicles. *Id.* Further, consumers who "shop online" at bmwusa.com are ultimately directed to local dealers, and vehicles they view are owned by dealerships. Customers cannot purchase a vehicle from BMW NA's website. *Id.*

Arigna also alleges that BMW NA "ratifies and holds [the East Texas Dealerships] out as the regular and established places of business of BMW in this District" by "requiring" the East Texas Dealerships to (1) store, display, and distribute various BMW NA marketing materials and

informational brochures, as well as parts and accessories for BMW vehicles; (2) offer customers certain BMW financial services, BMW product warranties, service by BMW-trained technicians (who are Dealership employees), and BMW parts and accessories; and (3) perform warranty service, maintenance, and other authorized service. FAC, ¶¶ 28-30. This is also inaccurate, in that BMW NA does not "require" these activities; they are mutually agreed and exchanged contractual rights and commitments resulting from the Dealer Agreements that the East Texas Dealerships and BMW NA voluntarily entered into. *See* Tedesco Decl., ¶ 13. These activities are beneficial and lucrative for the independent businesses that sell and service BMW products. *Id.*

BMW NA is not involved in—and certainly does not control or dictate—the hiring, firing, recruiting or compensation of any East Texas Dealership's employees. Tedesco Decl., ¶ 14. Those are all decisions and actions undertaken solely by Dealership management—not BMW NA. *Id.* And while BMW NA occasionally offers technical training opportunities to dealership service technicians across the U.S. at locations outside the E.D. Tex., BMW NA does not provide training at the East Texas Dealerships' locations or within the E.D. Tex. *Id.* Further, the Dealerships control their own properties; manage, purchase, and finance their own inventory; set their own prices for their products and services; determine the hiring, firing, promotion, supervision, reporting structure, assigned duties, and compensation of their own employees; and manage their own finances, including the Dealerships' capital structure, investments, dividends, asset acquisitions, borrowing, and other financial affairs. Tedesco Decl., ¶ 16.

Thus, BMW NA is not incorporated in Texas and has only arms-length contractual relationships with independent dealerships in this District who are separate and distinct entities from BMW NA, vehicle sales occur "exclusively" at these independent dealerships, and these independent dealerships, not BMW NA, employ service technicians and other employees to

perform warranty work. The facts are that BMW NA and the East Texas Dealerships are completely independent and separate corporate entities—and no facts can establish venue over BMW NA in the E.D. Tex. because BMW NA has no physical place of business here.

## III. ARGUMENT 1: VENUE IS IMPROPER IN THIS DISTRICT

### A. The Narrow Patent Venue Standard and Plaintiff's Burden to Meet It.

In patent infringement cases, the patent venue statute, 28 U.S.C. § 1400(b), is "the sole and exclusive provision controlling venue." *TC Heartland,* 137 S. Ct. at 1519. Section 1400(b) provides the only two bases for proper venue: "[a]ny civil action for patent infringement may be brought in the judicial district [(1)] where the defendant resides, or [(2)] where the defendant has committed acts of infringement and has a regular and established place of business." The plaintiff bears the "burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. 2018). The Supreme Court and Federal Circuit have cautioned that the patent venue statute is narrow. *E.g., In re Google LLC,* 949 F.3d 1338, 1346-47 (Fed. Cir. 2020) ("[T]he Supreme Court has cautioned against a broad reading of the venue statute. We also bear in mind the importance of relatively clear rules, where the statutory text allows, so as to minimize expenditure of resources on threshold, non-merits issues, of which venue is one.") (citations omitted); *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017) ("[T]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction."); *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (same).

Venue and jurisdiction must also be appropriate as to each defendant. *AGIS Software Dev., LLC v. ZTE Corp.,* Case No. 2:17-cv-517-JRG, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018) (citing *Magnacoustics, Inc. v. Resonance Tech. Co.,* 132 F.3d 49 (Fed. Cir. 1997)). Because Arigna cannot allege facts sufficient to establish proper venue over BMW NA in this District (because no such facts exist), the FAC must be dismissed. *In re Cray,* 871 F.3d at 1367 (directing

district court to grant motion to dismiss under Rule 12(b)(3) due to lack of venue).[3] Moreover, since BMW NA does not have a regular and established place of business in this District, the venue flaw in the FAC cannot be remedied and any attempted amendment would be futile.

**B. BMW NA Does Not "Reside" in Texas.**

Under the first prong of § 1400(b), a domestic corporate defendant resides ***only*** in the state where it is incorporated. *TC Heartland,* 137 S. Ct. at 1517 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."). There is no dispute that BMW NA is incorporated in Delaware; thus, BMW NA does not reside in Texas, and Arigna cannot rely on the first prong of § 1400(b) to establish venue.

**C. BMW NA Has No "Regular and Established Place of Business" Here.**

The second prong of § 1400(b) requires Arigna to show that venue is appropriate where "the defendant has committed acts of infringement ***and*** has a regular and established place of business." § 1400(b) (emphasis added). The "regular and established place of business" prong has three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place ***of the defendant***." *In re Cray*, 871 F.3d at 1360 (emphasis added). Venue is improper unless all three elements are satisfied. *Id.*

The first element of the "regular and established place of business" prong requires a "physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. The second requires the business to operate in a "steady[,] uniform[,] orderly[, and] methodical manner," and to be "fixed" and "not transient." *Id.* at 1362-63 (alterations in original). The third requires that the place of business must be ***the defendant's***, not just the place

---

[3] In deciding a Rule 12(b)(3) motion, well-pleaded facts are accepted as true "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, *2 (E.D. Tex. Aug. 28, 2017); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

of the defendant's employee or agent. *Id*. at 1363. "[T]he defendant must establish or ratify the place of business" as its own. *Id. Cray*, in the context of an employee of the defendant, not two separate corporate entities, articulated an array of non-exclusive considerations relevant to this inquiry, such as whether the defendant owns or leases the place, stores materials there, or advertises or "holds out" that it has a place there. *See id*. at 1363-64. The bottom line, though, is that a location is not the defendant's place of business unless the defendant actually maintains the location and "engage[s] in business from that location." *Id.* at 1364.

BMW NA has no facilities or offices, neither owns nor leases property, has no employees, and does not maintain a physical place of business in this District. Arigna does not allege otherwise. Instead, Arigna points only to the East Texas Dealerships. These Dealerships are not "places **of BMW NA**" and Arigna alleges no facts to establish, as required by *Cray*, that BMW NA "actually engage[s] in business from that location." 871 F.3d at 1364.[4] Rather, the Dealerships are separate and distinct from BMW NA, are owned by individuals unaffiliated with BMW NA, and have their own employees. As detailed below, BMW NA and the Dealerships cannot be considered a single entity for venue purposes; nor has BMW NA "ratified" the Dealerships' locations as its own places of business. Thus, the third prong of *Cray*'s test is not met, which is fatal to venue.

### 1. The East Texas Dealerships Are Not Alter Egos of BMW NA.

Corporations are considered to be separate and distinct entities, and courts must "start from the general rule that the corporate entity should be recognized and upheld unless specific and

---

[4] A defendant "doing business" at another's location does not transform the location into one "of the defendant." *See Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 624–25 (7th Cir. 1965) (declining to substitute the "doing business" test for the "regular and established place of business" test because doing so "would ignore the holding in [*Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957)]"); *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713 n.13 (1972) (distinguishing "doing business" (under § 1391(c)) from where a defendant has a "regular and established place of business" (under § 1400(b))).

unusual circumstances call for an exception. *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). Arigna does not dispute that BMW NA and the East Texas Dealerships are entirely separate corporate entities, or that the East Texas Dealerships are independently owned and operated. In fact, Texas law *prohibits* BMW NA from (i) owning an interest in, (ii) operating or controlling, or (iii) acting in the capacity of a motor vehicle dealership in most cases. *Se*e TOC § 2301.476(c). Further, Arigna does not (and cannot) allege BMW NA and the Dealerships are subsidiaries, bound by an alter-ego relationship, or that the entities fail to maintain corporate separateness in a manner that would justify disregarding the corporate forms.

### 2. Absent an Alter-Ego Relationship, Distributors Like the East Texas Dealerships Cannot Create Venue over Unrelated Corporate Entities.

Federal courts (including the E.D. Tex.) have repeatedly held that "[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (citing Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.)); *Soverain IP, LLC v. AT&T, Inc.,* No. 2:17-cv-293-RWS-RSP, 2017 WL 5126158, *1 (E.D. Tex. Oct. 31, 2017) (Payne, M.J.) (holding that for a place of business to be imputed from one corporate entity to another, the entities "must lack formal corporate separateness, which is a difficult standard to meet"), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) (Bryson, J.).[5] Indeed, long

---

[5] A further non-exhaustive list of cases holding that a distributor's place of business cannot establish venue for its supplier includes: *National Steel Car Ltd. v. Greenbrier Co., Inc.,* Civil Action No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *3 (W.D. Tex. July 27, 2020) (holding that in "order to not dismiss this case, the Court must find the line between [defendant] and its subsidiaries have so blurred that the two become one" and the presumption of institutional independence of related corporate entities may be rebutted only by "clear evidence"); *Interactive Toybox v. Walt Disney Co.,* Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores to parent Disney company for venue purposes);

*Symbology Innovations, LLC v. Lego Sys., Inc.,* 282 F. Supp. 3d 916 (E.D. Va. 2017) (not imputing retail Lego stores to parent Lego company for venue purposes); *Wet Sounds, Inc. v. PowerBass USA, Inc.,* No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.,* No. 17-cv-02821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.,* No. 5:14-cv-2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC,* No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.,* 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distribs., Inc.,* No. 17-23060-CIV, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design,* No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.,* No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) ("business connections with distributors, retailers, and consumers in this district" are insufficient); *Boston Sci. Corp. v. Cook Grp. Inc.,* 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.,* No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *LoganTree LP v. Garmin Int'l, Inc.,* No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera,* No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))); *see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.,* 531 F.2d 1382, 1387 (7th Cir. 1976) ("In these cases we found venue improper in the subject district even though defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis . . ." (quoting *Grantham v. Challenge-Cook Bros.,* 420 F.2d 1182, 1184–85 (7th Cir. 1969)); *Shapiro v. Ford Motor Co.,* 359 F. Supp. 350, 357 (D. Md. 1973) (finding that even when even two entities share a unitary business purpose "venue over one [entity] under § 1400(b) cannot be gained by treating the regular and established place of business of the other [entity] as the office of the former" if the two entities are formally separate).

ago, the Supreme Court held that even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, t 267 U.S. 333, 334-36 (1925); *see also Soverain IP*, 2017 WL 5126158, at *1 (citing *Cannon*). And if the physical locations of closely related, commercially united, and wholly-owned ***subsidiaries*** of a defendant cannot establish venue over the defendant (provided it is not an alter ego), then certainly, ***independent*** locally-owned businesses cannot do so—as courts have almost universally held. *See Vaxcel Int'l Co. v. Minka Lighting, Inc.,* No. 18 CV 0607, 2018 WL 6930772, at *3 (N.D. Ill. July 11, 2018) (collecting cases for the canon that "independent distributors, such as authorized retailers . . . ***do not suffice to establish venue under § 1400(b)***.") (emphasis added); *Green Fitness Equip. Co., LLC v. Precor Inc.*, Case No. 18-cv-00820-JST, 2018 WL 3207967, at *3 (N.D. Cal. June 29, 2018) (same).

For example, in *EMED Techs.*, Judge Bryson, sitting by designation from the Federal Circuit, held that the locations of a defendant's distributors, who defendant identified as retail sellers of its products on the defendant's website and who were allegedly "necessary to conduct the business of the defendant," did not establish venue over the defendant because the companies were separate corporate entities in "an arms-length supplier-distributor relationship." 2018 WL 2544564, at *2. The court confirmed that the "consistent and substantial case law authority that the place of business of a corporation's distributor is not, without more, an appropriate venue for a patent infringement action," and noted that plaintiff's distributor-based theory of venue "would largely overturn the decisions in *TC Heartland* and *Cray*, converting the test for venue in patent cases into one similar to the test for personal jurisdiction." *Id.* at *2-3 (collecting cases).

13

The Federal Circuit has made clear that a venue theory similar to the one Arigna asserts is "frivolous." For example, in *Westech Aerosol Corp. v. 3M Co.,* 927 F.3d 1378, 1383 (Fed. Cir. 2019), the Federal Circuit held it was "frivolous" for a plaintiff to argue on appeal that contractual distribution relationships, like those between BMW NA and the East Texas Dealerships, can establish venue, as Arigna now does. Specifically, as Arigna does here, Westech alleged that 3M (1) contracted with in-district distributors; (2) had sales representatives in the district; (3) represented that 3M sold product in the district; and (4) earned substantial revenue from the district. *Id.* at 1381. But the Federal Circuit found Westech's claim that these allegations established venue "frivolous" because the allegations of contractual ties with in-district distributors were not enough to establish that a defendant has a regular and established place of business. *Id.* at 1382-83. Arigna's venue theory, which is based solely on contractual distribution relationships between BMW NA and the East Texas Dealerships, is equally meritless and must be similarly rejected.

Simply, there is no dispute that BMW NA and the East Texas Dealerships are separate and distinct corporate entities—each Dealership is independently owned and operated by individuals who are *not* employed by BMW NA and/or by business entities in which BMW NA has no ownership interest. *See* Tedesco Decl., ¶ 3; Exs. A-G. There is no evidence that any of these dealers or their owners are alter egos of BMW NA (because they are not). The many, many cases collected above and in *EMED Techs.* show that district courts do not disregard separate corporate forms even when the in-district entities are subsidiaries of a non-resident defendant parent corporation. Here, there is and can be no allegation or evidence suggesting that BMW NA is the parent of the East Texas Dealerships or in any way affiliated with their independent owners. And Arigna has not alleged any facts to support piercing the corporate veil, let alone "clear evidence" to upend the

"heavy presumption" that corporate entities are separate. *National Steel Car Ltd.*, 2020 WL 4289388, at *3 (W.D. Tex. July 27, 2020).

Instead, Arigna's theory appears predicated on the facts that the BMW NA entered into voluntary agreements with the East Texas Dealerships and licenses its trademarks and trade dress for use by the Dealerships, but those have no bearing on whether corporate independence can be disregarded. Plainly, it cannot. *See, e.g., Interactive Toybox,* 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores, which use Disney trademarks and trade dress, to parent Disney company for venue purposes); *Symbology Innovations, LLC,* 282 F. Supp. 3d at 933 (same for Lego stores). Because no allegation or evidence supports disregarding corporate forms, the Dealerships' physical locations cannot constitute places of BMW NA.

### 3. When Corporate Formalities Are Observed, One Corporate Entity Cannot "Ratify" a Place of Business Owned, Operated, and Controlled by Another Separate and Distinct Entity.

The bulk of Arigna's venue allegations apparently rest on an incorrect theory of "ratification." Arigna alleges that BMW NA has "ratified and holds [the East Texas Dealerships] out as the regular and established places of business of BMW" in this District "by directing and controlling [the Dealerships'] actions, sales, and services" in various ways—such as requiring the East Texas Dealerships to display and use BMW trademarks and brand images, controlling the location and visual attributes of the Dealerships' facilities, and requiring them to sell BMW parts and services and provide maintenance and repairs on BMW vehicles under warranty. FAC, ¶¶ 26-27, 29-30, 33. Two district courts have addressed, under nearly identical facts, whether venue is proper *for BMW NA specifically* based on a theory that BMW NA "ratified" the places of business of in-district dealers, and determined the answer to be a resounding "no." And other courts have directly rejected similar "ratification" theories in the context of separate corporate entities.

### a. *Omega* rejects BMW NA's alleged "ratification" of dealerships.

In *Omega Patents, LLC v. Bayerische Motoren Werke AG*, No. 1:30-cv-01907-SDG, 2020 WL 8184342 (N.D. Ga. Dec. 21, 2020), the plaintiff argued that BMW NA ratified independent BMW dealerships in the Northern District of Georgia as BMW NA's places of business because BMW NA allegedly funneled numerous business and marketing activities through the dealerships. For example, just as Arigna has done here, the plaintiff alleged that BMW NA "promotes" dealer locations on BMW NA's website, markets BMW products in the district, sets "standards and requirements" through "dealer agreements" that the dealers must follow, and provides new car warranty services at the dealerships. *Omega Patents*, 2020 WL 8184342, at *5.

The court held that these allegations could not overcome the "persuasive authority holding that 'distributors and even subsidiaries, that are independently owned and operated, . . . [are] not sufficient to show that the accused infringer has a regular and established business under § 1400(b).'" *Id.* (quoting *Reflection, LLC*, 2018 WL 310184, at *2 (S.D. Cal. 5, 2018)). The court explained that, "[a]t best, [plaintiff's] allegations show BMW NA maintains a mutually beneficial, coordinated business relationship with the dealerships to sell its products to customers in this District. But facilitating business and services through an independent entity is not enough for ratification." *Id.* (citing *Uni-Sys., LLC v. U.S. Tennis Ass'n Nat'l Tennis Ctr. Inc.,* No. 17-cv-147(KAM)(CLP), 2020 WL 1694490, at *15 (E.D.N.Y. Apr. 7, 2020) ("contract[s] to do business . . . are just that—agreements to *do business,* not to maintain a *place of business.* One can engage in business at a place that is not its own . . . . Ratifying a place of business as one's own requires more than simply agreeing to do business at the place") (emphasis in original)); *Zaxcom, Inc. v. Lectrosonics, Inc.,* No. 17-cv-3408-NGG-SJB, 2019 WL 418860, at *9 (E.D.N.Y. Feb. 1, 2019) (defendant's contracts with third-party to provide non-exclusive repair and maintenance services do not render third-party's location a place of business of defendant)). The court further held that

"common marketing strategies and some modicum of control over the dealerships' macro-level operations by BMW NA [did not] transform[] them into its own places of business." *Id.* Thus, the court rejected allegations nearly identical to those Arigna makes here as insufficient to impute the locations of independent BMW dealerships to BMW NA for venue purposes.

The *Omega* court also directly addressed the vacated decision in *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG,* C.A. No. 2:17-cv-418-JRG, Dkt. 90, at 15 (E.D. Tex. Sept. 6, 2018), in which the E.D. Tex. initially found venue proper as to BMW NA based on the locations of independent dealerships.[6] The *Omega* court "respectfully disagree[d] with *Blitzsafe* that the Federal Circuit intended its *Cray* holding to be interpreted so broadly as to encompass independent entities in the absence of an alter-ego relationship." *Omega Patents, LLC,* 2020 WL 8184342, at *5. Echoing the concerns expressed in *EMED Techs.*, the *Omega* court explained:

> The Federal Circuit decided *Cray* in the context of a residential home office, which bears little resemblance to the relationship between BMW NA and the independent dealerships. And the court expressly instructed subsequent courts to "be careful not to conflate showings that may be sufficient for other purposes, *e.g.,* personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *Cray,* 871 F.3d at 1361. . . .A finding that venue is proper in this District as to BMW NA under the facts alleged would, in this Court's view, significantly expand the scope of § 1400(b)—a result it does not believe the Federal Circuit intended with its decision in *Cray*. 871 F.3d at 1361.

*Id.* The case law since *Blitzsafe* has developed significantly, and the post-*Blitzsafe* Federal Circuit and district court decisions have consistently interpreted *Cray* narrowly.[7]

---

[6] Reconsideration of the initial Blitzsafe venue decision was pending when the decision was vacated. *See Blitzsafe Texas, LLC,* 2:17-cv-418-JRG, Dkt. 94 (E.D. Tex. Sep. 20, 2018) (reconsideration motion; No. 2:17-cv-418-JRG, Dkt. 124 (E.D. Tex. Aug. 1, 2019) (order vacating decision).

[7] *See, e.g., In re Google LLC,* 949 F.3d at 1346 (Fed. Cir. 2020); *Uni-Sys.*, 2020 WL 1694490, at *15; *Tech. Software, Inc. v. RTV, Inc.*, 377 F. Supp. 3d 195, 209 (E.D.N.Y. 2019) (holding "[a]lthough RTV's actions and contacts within the district would likely be sufficient to satisfy the general venue statute, the Court is mindful that the patent venue statute is narrower.").

### b. *West View* rejects BMW NA's alleged "ratification" of dealerships.

In *West View Research, LLC v. BMW of N. Am., LLC*, the Southern District of California found the presence of five dealerships did not create venue over BMW NA. 2018 WL 4367378, at *6–8. Like Arigna here, the plaintiff argued that: (1) BMW NA's dealer agreements afforded it control over the dealerships; (2) BMW NA prominently advertised the BMW brand at the dealerships; and (3) the dealerships' employees served BMW NA's customers. *Id.* at *6–7. And seizing on the "ratification" language in *Cray*, the plaintiff further alleged that the dealerships are "permanent places of business ratified and controlled by BMW NA" through the dealership agreements between BMW NA and the dealerships. *See West View Research, LLC v. BMW of N. Am., LLC*, Case No. 3:16-cv-02590-JLS-AGS, Dkt. 61 at 4:20-23 (S.D. Cal. Dec. 15, 2017) (citing plaintiff's sealed supplemental briefing on the impact of *Cray* on venue over BMW NA).

Facing and rejecting the same arguments Arigna now advances, the *West View* court explained, "Plaintiff's theory is predicated on the Defendants' operating agreement with the BMW and MINI dealerships exerting such control that the dealerships are essentially the same entity." *Id.* at *8. The court rejected these arguments, holding that they "ignore[ ] the separate corporate forms of [BMW NA] and the dealerships" and finding "no facts to support collapsing the corporate forms." *Id.* at *8. Thus, although BMW NA and the dealerships have arms-length contractual agreements, without collapsing the corporate form, "the dealerships' physical locations are not places of [BMW NA]" and venue cannot attach based on the dealerships. *Id.*

### c. *Board of Regents* rejects "ratification" theory.

*Board of Regents v. Medtronic PLC* is also instructive on imputing the location of one corporate entity to another for venue purposes via supposed "ratification." Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018). Initially, the court found that defendant Medtronic had "ratified" in-district locations of another corporate entity (a subsidiary

of Medtronic) by listing the subsidiary's place of business on Medtronic's website and in telephone and web-based directories, and by placing a Medtronic sign on the building's exterior. *Id*. at *2. On reconsideration, however, the court found that Medtronic in fact had not ratified any of the in-district locations, because "[e]xcept where corporate formalities are ignored and alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative." *Id.* (citations omitted).

Despite Arigna's similar allegations that BMW NA advertises in this District and has a website that connects potential buyers to in-district dealerships, *see* FAC at ¶ 25, and that the East Texas Dealerships use BMW trademarks, signage, and trade dress, *see id.* at ¶¶ 26-27, BMW NA's connection to the **independent** Dealerships is even more attenuated than Medtronic's was to its **own subsidiary**. There, the companies were in the same corporate family—here, in contrast, the Dealerships are true third parties and completely separate entities from BMW NA. Accordingly, the wholly independent East Texas Dealerships cannot impute venue to BMW NA. *See also Vaxcel Int'l Co.,* 2018 WL 6930772, at *3 (finding venue improper where a defendant merely "ratified" authorized retailers' locations "as locations for consumers to purchase [defendant's] products, rather than … as locations from which [defendant] conducts business as required under *Cray*").

### 4. The East Texas Dealerships Are Not Agents of BMW NA, and the Dealer Agreements Do Not Create an Agency Relationship.

To bolster its roundly rejected "ratification" theory, Arigna appears to also rely on a theory of "agency" via "ratification," but the Federal Circuit has already rejected that idea too. *See In re Google,* 949 F.3d 1338, 1345 (Fed. 2020) (finding that Google's contracts with in-district hosts for its servers did not establish an agency relationship for venue purposes). For example, Arigna alleges that BMW NA has "ratified and holds [the East Texas Dealerships] out as the regular and established places of business of BMW" in this District "by directing and controlling [the

Dealerships'] actions, sales, and services" in various ways—including requiring the East Texas Dealerships to display and use BMW trademarks and brand images, controlling the location and "overall look and feel" of the Dealerships' facilities, and requiring them to sell BMW parts and services and provide maintenance and repairs on BMW vehicles under warranty. FAC, ¶¶ 26-27, 29-30, 33. Arigna further alleges that BMW NA "has consented to [the East Texas Dealerships] acting on BMW's behalf," and that the East Texas Dealerships "have consented to act on BMW's behalf pursuant to the foregoing terms of control and direction." *Id.*, ¶ 33. However, the Federal Circuit has held that a "regular and established place of business" requires the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *See In re Google,* 949 F.3d at 1345.

An agency relationship is a fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act. *In re Google,* 949 F.3d at 1345 (citing Restatement (Third) of Agency § 1.01). The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act. *Id.* (citing *Meyer v. Holley,* 537 U.S. 280, 286 (2003)). No existing court decisions have found that a motor vehicle dealership meets this standard (and at least two have dismissed nearly identical versions of it). And, here, there is no agency relationship between BMW NA and the independent East Texas Dealerships.

### a. BMW NA does not, and cannot, direct or control the East Texas Dealerships' actions.

As detailed above, BMW NA and the East Texas Dealerships conduct business via voluntary, arms-length contractual agreements. Tedesco Decl., ¶ 4. Each Dealership is

independently owned and operated by individuals and/or entities that BMW NA does not employ, control, or hold any interest in. Tedesco Decl., ¶ 3. In fact, Texas law *expressly prohibits* BMW NA from directing or controlling the Dealerships, except in very limited circumstances that do not apply here. *See* TOC § 2301.476(c)(1)-(3) (a manufacturer or distributor "may not directly or indirectly" (i) "own an interest in," (ii) "operate or control," or (iii) "act in the capacity of" a "franchised dealer or dealership . . . for the same type of motor vehicle that" it manufactures or distributes).[8] Indeed, none of the mutually beneficial provisions of the Dealer Agreements bestow "control" of the Dealerships to BMW NA.[9] For example:

- BMW NA does not control each Dealership's physical location or facility, nor does BMW NA restrict where or to whom the East Texas Dealerships can sell vehicles. *See* Tedesco Decl., ¶¶ 9, 12. Instead, each Dealership selects its location and facility, which it owns, leases or otherwise controls. *Id.*, ¶ 9 BMW NA and the Dealership mutually approve the location in the Dealer Agreement, which confers on the Dealership the right to purchase, sell, and service BMW products from that location. *Id.*

- BMW NA does not force "look-and-feel" attributes on the Dealerships. Instead, the Dealer Agreements provide for the consistent display of BMW trademarks and brand imaging because both BMW NA and dealers have a substantial interest in assuring that the vehicles dealers sell are recognizably associated with the quality and goodwill of the BMW brand.[10] Tedesco Decl., ¶ 12.

- BMW NA does not force the Dealerships to provide anything to customers. Instead, the East Texas Dealerships voluntarily agreed in their Dealer Agreements to store,

---

[8] *Cf. Ford Motor Co. v. Miles,* 967 S.W.2d 377, 380-82 (Tex. 1998) (finding that local Ford dealers—even those performing warranty work—are not controlled by the national distributor for the purposes of a state statute which allows venue wherever an out-of-state entity had "an agency or representative"); *General Motors Corp. v. Washington,* 559 S.W.2d 425, 428 (Tex. Civ. App. 1977) (finding that warranty service performed by GM dealers did not establish that national distributor had a local agent needed to establish venue under state law).

[9] Indeed, if BMW NA controlled the dealerships, the detailed provisions of the Dealer Agreements would be unnecessary, as BMW NA could configure the dealerships how it chose. The parties must spell out their agreements on various issues precisely because the dealerships are independent businesses.

[10] Moreover, trademark laws generally require that the trademark holder take steps to regulate the quality of the goods and services sold under the mark. *See generally Freecycle Sunnyvale v. The Freecycle Network*, 652 F.3d 509 (9th Cir. 2010) (trademark holder forfeited its mark by failing to adequately control the quality of the goods sold under its trademarks).

display, and distribute various BMW NA marketing materials; to offer customers BMW financial services, warranties, parts and accessories; and to provide service and maintenance by BMW-trained dealer-employed technicians. Tedesco Decl., ¶ 13. These activities are very beneficial and lucrative for the independent businesses. *Id.*

The mutually beneficial arms-length agreements between BMW NA and the East Texas Dealerships are typical of distributor agreements, they are not adhesion contracts, and they are strictly regulated by Texas state law. Indeed, Arigna concedes that the Dealer Agreements have significant advantages for both BMW NA and the East Texas Dealerships, alleging that the Dealerships bring in "substantial revenues." FAC, ¶ 116.

### b. BMW NA does not manifest consent that the East Texas Dealerships should act on its behalf.

In the Dealer Agreements, BMW NA and the Dealerships expressly disavow any agency or fiduciary relationship and agree that each Dealership "will conduct its BMW Vehicle Operations on its own behalf and for its own account," "has no power or authority to act for or to bind BMW NA," and that "BMW and shall not represent directly, indirectly, or by implication that the [Dealership] has any such power or authority." Tedesco Decl., ¶ 5 & Ex. G, ¶ 18(f).

Likewise, BMW NA's website merely identifies the East Texas Dealerships for what they are: authorized retail "dealerships" or "centers" where consumers can purchase BMW vehicles and services. Tedesco Decl., ¶ 10. BMW NA's website expressly states that dealerships are "non-affiliated companies" and "distinct entities."[11] While BMW NA advertises and promotes the BMW® and MINI® brands, its advertising (including its website, www.bmwusa.com) directs consumers to visit local (independent) dealers to test drive, purchase, and take possession of BMW NA vehicles. Tedesco Decl., ¶ 10. Consumers who "shop online" at bmwusa.com are likewise

---

[11] https://www.bmwusa.com/privacy-policy/index.html (identifying dealers as "non-affiliated companies that market our products and services such as our authorized BMW dealers who are distinct entities and have their own privacy policies").

directed to local dealers, and any vehicles they may view are owned by dealerships. Customers cannot purchase a vehicle from a dealer using BMW NA's website. *Id.*

Nor does the East Texas Dealerships' using the "BMW" brand in their d/b/a (e.g., "Classic BMW" or "BMW of Beaumont") or displaying the "BMW" logo mean that BMW NA has ratified their independently owned facilities as its own places of business. Rather, the Dealerships' use and display of such trademarks merely indicates to consumers that BMW products can be purchased and serviced at the Dealerships and communicates the quality associated with the BMW brand.

### c. The East Texas Dealerships Control Themselves, and Act on Their Own Behalf.

The Dealerships are distinct corporate entities, acting on their own behalf. Tedesco Decl., ¶ 5 & Ex. G, ¶ 18(f). The Dealerships control their own properties; manage, purchase, and finance their own inventory; set their own prices for the products and services they provide; determine the hiring, firing, promotion, supervision, reporting structure, assigned duties, and compensation of their own employees; and manage their own finances, including the Dealerships' capital structure, investments, dividends, asset acquisitions, borrowing, and other financial affairs. Tedesco Decl., ¶ 16. Consistent with the TOC that prohibits BMW NA's control, the Dealerships retain separate corporate ownership. Accordingly, because none of the "agency" requirements are met, the East Texas Dealerships are not agents of BMW NA.

### 5. Providing a Warranty Does Not Create Venue.

Arigna alleges that BMW NA provides vehicle warranties, but also recognizes that warranty service is performed at the East Texas Dealerships by technicians employed by the Dealerships—not by BMW NA. FAC, ¶¶ 29 (alleging that technicians are "certified and/or trained" but not employed by BMW NA), 30. Offering a warranty for a product that is honored by a dealership does not convert a dealership into an established place of business of BMW NA.

*Knapp-Monarch*, 342 F.2d at 625 ("[T]he fact that Casco's warranties against defective products were honored by its dealers and its authorized repair station does not mean that the company had a regular and established place of business in Chicago.").

BMW NA's relationship with the Dealerships is consistent with other distributor-dealer relationships. Many entities provide warranties that are serviced through local entities and provide interactive websites that direct customers to local dealers. Indeed, courts have found venue improper over defendants that also do this. *See Agis Software*, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) (plaintiff explicitly alleged that defendant had a "customer facing website" and provided "warranty service" through a third-party). Yet, Arigna argues that BMW NA "establishes, authorizes, and requires" the independent dealerships to offer BMW warranties and perform repairs and service pursuant to those warranties, and this somehow elevates the Dealerships into venue-anchoring places of business. FAC at ¶ 30. But Arigna is incorrect. Tedesco Decl., ¶ 13. Providing for the performance of repairs and maintenance (which BMW NA and the Dealerships have mutually agreed to do) is precisely the point of a product warranty, and the technicians are all employed by (and are thus supervised and controlled by) the independent Dealerships. At any rate, consistently, the "abundant case law" says a dealership is not the place of business of the defendant. *See EMED Techs.*, 2018 WL 2544564, at *2; *see also* n.5, *supra*. Accordingly, as Arigna cannot establish venue based on BMW NA providing warranties for its products, the FAC should be dismissed.

## IV. ARGUMENT 2: ARIGNA FAILS TO STATE A CLAIM FOR INFRINGEMENT

### A. Rule 12(b)(6) and the *Iqbal/Twombly* Pleading Standard.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B. Arigna's Direct Infringement Claims Against BMW NA Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.

Arigna failed to plead sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Instead, Arigna pleaded only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Id.* Regarding each of the '318 and '867 Patents, Arigna accuses BMW NA of direct infringement by alleging that certain BMW products incorporate infringing third-party chipsets/IGBT devices. FAC, ¶¶ 144, 150, 223, 228, 230, 234. But these allegations suffer a fatal flaw: nowhere does the FAC recite facts that establish the identified BMW products actually use the third-party chipsets/IGBT devices, let alone how such components actually infringe. The FAC thus fails to provide sufficient factual allegations from which the Court can draw a reasonable inference of direct infringement. *Iqbal*, 556 U.S. at 678.

#### 1. Arigna's Direct Infringement Claims Relating to the '318 Patent Fail to Plead Sufficient Factual Allegations.

Arigna accuses certain BMW products (the BMW 8 Series, 7 Series, 5 Series, 3 Series, X3, X4, X5, X6, X7, and M5) of using the NXP MR2001 chipset that allegedly infringes the '318 Patent. FAC ¶¶ 144, 150. Notably missing from the FAC, however, are factual allegations showing that (a) the MR2001 is actually used in the identified BMW products, and (b) how or why the MR2001 actually meets the elements of the asserted claim. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint

as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

The only allegations pleaded in support of direct infringement comprise a single paragraph reciting the asserted claim, followed by repetition of that same claim language broken down by element. FAC, ¶¶ 145-149. But pleadings like Arigna's FAC have been unambiguously rejected by this Court as being insufficient to draw a link from the accused BMW products to the asserted claims. For example, in *Chapterhouse, LLC v. Shopify, Inc.*, the E.D. Tex. held that the plaintiff's simple repeating of the claim language "on its own," absent accompanying factual allegations, "is a mere conclusory statement" and insufficient to state a plausible claim. No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). The Court indicated that "the more complicated [the involved] claims and technology" are, the more the complaint must provide "in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." *Id.*

Like *Chapterhouse*, this case involves complicated technology—the '318 Patent concerns temperature-compensated voltage-controlled oscillator circuitry operating in a microwave or millimeter wave region and sealed in a semiconductor chip that is further deeply embedded in a vehicle (FAC ¶¶ 118, 122). Indeed, asserted claim 2 spans over 34 lines ('318 Patent, 7:17-8:24) and recites numerous elements—this level of complexity requires "materially more than the bare bones allegations" in Arigna's FAC. *Chapterhouse*, 2018 WL 6981828, at *2. Yet, Arigna makes only "a mere conclusory statement" that the identified BMW products incorporate the MR2001, and alleges that the MR2001 (which, as shown below, is just a black box provided by a third party as far as BMW NA knows and Arigna's FAC alleges) meets every element of the asserted claim by simply parroting the claim language "on its own." *Id.* These statements fail to plead sufficient factual allegations to meet the *Iqbal*/*Twombly* pleading standard. *Id.*



*See* NXP Semiconductors, MR2001 Multi-channel 77 GHz Radar Transceiver Chipset, https://www.nxp.com/products/no-longer-manufactured/mr2001-multi-channel-77-ghz-radar-transceiver-chipset:MR2001 (last visited Apr. 30, 2021).

Indeed, in *Chapterhouse*, the court dismissed the plaintiff's claim even though the plaintiff provided supporting screenshots for every element. *Chapterhouse*, 2018 WL 6981828, at *2. Arigna's FAC provides far less—only one screenshot. FAC ¶ 146. And that screenshot fails to show where any limitations of the '318 Patent allegedly exist in the MR2001—it is merely a screenshot of a datasheet that says the MR2001 generally includes a "VCO (voltage controlled oscillator), a two-channel Tx transmitter, and a three-channel Rx receiver." *Id.* Arigna's direct infringement allegations for the '318 Patent are therefore insufficient to state a claim.

### 2. Arigna's Direct Infringement Claims Relating to the '867 Patent Fail to Include Sufficient Factual Allegations.

In the FAC, Arigna provides two sets of direct infringement allegations relating to the '867 Patent, both of which suffer the same flaws as Arigna's allegations with respect to the '318 Patent.

***First***, Arigna alleges that certain BMW products (the BMW i3, i8, X3 xDrive30e, and X5 xDrive45e) incorporate Infineon FS900R08A2P2_B31 and FS900R08A2P2_B32 power modules that use Infineon's EDT2 technology, citing to a Facebook page and an Infineon product webpage that claim Infineon's HybridPACK 2 IGBT power modules were used in the BMW i8 and BMW i3. *Id.* ¶¶ 223-224, 228 (Figs. 61-62). But neither the Facebook page nor the Infineon product webpage mentions the FS900R08A2P2_B31, FS900R08A2P2_B32, or the EDT2 technology.

Thus, Arigna's factual allegations do not establish whether the FS900R08A2P2_B31 and FS900R08A2P2_B32 are actually used in the accused BMW products.

Moreover, Arigna's allegations that the FS900R08A2P2_B31 and FS900R08A2P2_B32 each infringe the asserted claim comprise nothing more than a word-for-word recitation of the asserted claim. *Id*., ¶¶ 225-227. But, as discussed above, bare-bones allegations cannot state a claim for infringement of a detailed patent claim involving complex technology. *See Chapterhouse*, 2018 WL 6981828, at *2. Here, the '867 Patent concerns a highly complicated "semiconductor device with a trench gate structure . . . that is capable of minimizing a cell size while keeping a low on-resistance." FAC, ¶ 124. Asserted claim 8 reflects this complicated technology, reciting a semiconductor device that has numerous intricate structures like "base layer," "source layer," "insulating film," "gate structures," "conductive portion," and "source electrode," with dimensions at a microscopic scale like "10 nm or more and 40 nm or less." '867 Patent, 14:1-16. Yet, the FAC provides only one screenshot (Figure 60), which shows a white box under the trademark "HybridPACK$^{TM}$ 2." FAC, ¶ 224. But the screenshot does not mention the name of "FS900R08A2P2_B31" or "FS900R08A2P2_B32," and the white box does not even remotely show any of the claimed semiconductor structures. These statements are far from "permit[ting] the Court to find that the *Iqbal/Twombly* standard is met." *Chapterhouse*, 2018 WL 6981828, at *2. Accordingly, Arigna's first infringement should be dismissed.

**Second**, Arigna alleges that a different BMW product (the BMW 330e) incorporates the allegedly infringing Infineon AIGW50N65F5 transistor. FAC, ¶¶ 230, 234. But this allegation also contains only mere conclusory statements that are insufficient to state a claim for infringement of the complex technology accused. *See Chapterhouse*, 2018 WL 6981828, at *2. For example, regarding whether AIGW50N65F5 infringes the '867 Patent, Arigna asserts that "cross-sectional

imaging of the Infineon AIGW50N65F5 shows" some limitations of the asserted claim. FAC, ¶ 233. But the FAC omits this alleged cross-sectional imaging. Instead, Arigna only provides a single screenshot (Figure 63) showing three black boxes along with the trademark "TRENCHSTOP™ 5 F5." *Id.*, ¶ 231 (below).

**FIGURE 63**



But this figure does not show, and Arigna does not say, whether the black boxes contain the AIGW50N65F5 transistor. These black boxes fail to show anything from which BMW NA can evaluate whether "[t]he Infineon AIGW50N65F5 meets every element of claim 8," as Arigna alleges. *Id.*, ¶ 232. Moreover, Arigna does not allege any facts showing the AIGW50N65F5 transistor is actually used in the identified BMW product. Thus, Arigna's conclusory statements are insufficient to state a plausible claim. In sum, because the FAC completely fails to plead sufficient facts that "allow the court to 'draw the reasonable inference that [BMW NA] is liable for'" the infringement of the '318 and '867 Patents, Arigna's threadbare claim language recitations should be denied as insufficient and its claim for direct infringement should be dismissed. *Chapterhouse*, 2018 WL 6981828, at *1 (quoting *Iqbal*, 556 U.S. at 678).

## C. Arigna's Indirect Infringement Claims Against BMW NA Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.

It is unclear from the FAC whether Arigna intends to allege indirect infringement against BMW NA. In the FAC, Arigna references the statutory codes for induced and contributory

infringement in passing, alleging that "BMW is liable for its infringement of the '318 Patent pursuant to 35 U.S.C. § 271(a), *(b), and (c)*." FAC, ¶ 143 (emphasis added). Arigna repeats the same verbiage in its allegation against "BMW" with respect to the '867 Patent. *Id.*, ¶ 222. However, the complaint makes no other mention of indirect infringement. To the extent Arigna intended to plead an indirect infringement claim, it should be dismissed for failure to state a claim.

To state a claim for induced infringement, one must plead (1) underlying direct infringement by another; and (2) that the defendant undertook an affirmative act to encourage infringement, with knowledge that its actions would cause infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). To state a claim for contributory infringement, one must plead "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Here, Arigna does not plead any of these legal requirements, let alone facts to support them. Simply referencing statutory code numbers, with nothing more, does not state a plausible claim for indirect infringement. For these reasons, to the extent Arigna intended to plead a claim for indirect infringement, such should be dismissed. *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4-6 (E.D. Tex. Aug. 14, 2015) (dismissing the indirect infringement claims for lack of factual basis upon which a plausible inference of indirect infringement can be drawn); *Nobelbiz, Inc. v. Insidesales.com, Inc.*, No. 6:13-cv-360-MHS, 2014 WL 12378804, at *4 (E.D. Tex. Oct. 14, 2014) ("While a plaintiff need not *prove* its case at the pleading stage, [the] First Amended Complaint lacks enough facts to state a plausible claim of indirect infringement.").

**V. CONCLUSION: VENUE IS IMPROPER AND ARIGNA STATED NO CLAIM**

For the above reasons, BMW NA respectfully requests that Arigna's FAC be dismissed.

Dated:  May 3, 2021

Respectfully submitted,

**BMW OF NORTH AMERICA, LLC,**

By its attorneys,

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

**Of Counsel:**

William N. Berkowitz (*pro hac vice* to be submitted)
Katherine R. Moskop (*pro hac vice* to be submitted)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210
Phone: (617) 946-4800
wberkowitz@seyfarth.com
kmoskop@seyfarth.com

Robert J. Carty (*pro hac vice* to be submitted)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, TX 77002
Phone: (713) 225-2300
Fax: (713) 225-2340
rcarty@seyfarth.com

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, I caused the foregoing to be electronically with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF")

all counsel of record who have appeared in this case. I also caused the document above and exhibits

thereto to be sent to all counsel of record via electronic mail.

/s/Lionel M. Lavenue
Lionel M. Lavenue


## AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule 5(a)(7)(B), I hereby certify that a motion to seal this Motion and

attachments has been filed (*see* Dkt. No. 83, dated May 3, 2021).

/s/Lionel M. Lavenue
Lionel M. Lavenue