IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ARIGNA TECHNOLOGY LIMITED, § § *Plaintiff*, § § v. § § VOLKSWAGEN AG, ET AL. § § *Defendants*. § | Case No. 2:21-cv-00054-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court are three motions: Motion to Dismiss Pursuant to Rules 12(b)(5) and 12(b)(6) filed by Daimler AG, Dkt. No. **90**; Motion to Dismiss Pursuant to Rules 12(b)(3) and 12(b)(6) filed by Mercedes-Benz USA, LLC, Dkt. No. **91**; and Motion to Dismiss filed by Daimler and Mercedes. Dkt. No. **230**.

I. **Background**

Arigna's initial complaint was filed on February 18, 2021 and contained claims that Daimler and Mercedes were infringing U.S. Pat. No. 7,397,318. Dkt. No. 1. Later, Arigna filed its First Amended Complaint ("FAC") which added a claim of infringement of U.S. Pat. No. 8,247,867 (the "'867 Patent") against certain defendants, but not Daimler and Mercedes. *See* Dkt. No. 182 at ¶¶ 233-69. Finally, on July 22, 2021, Arigna filed its Second Amended Complaint ("SAC") which added additional defendants. *Id*. at ¶¶ 112-16 (adding "Continental" defendants).

For venue as to Mercedes, Arigna's SAC alleges that five independently-owned-and-operated dealerships located in the District are agents of Mercedes and that Mercedes has ratified these dealerships as places of business of Mercedes. *Id.* at ¶ 37. These dealerships are Mercedes-Benz of Tyler, Mercedes-Benz of Beaumont, Mercedes-Benz of Texarkana, Mercedes-Benz of

1

McKinney, and Mercedes-Benz of Plano (the "Dealerships"). *Id.* Daimler and Mercedes argue that these Dealerships do not render venue proper as to Mercedes and therefore the case should be dismissed. Dkt. No. 230 at 1. In the alternative, Daimler and Mercedes ask the Court to transfer the case to the Northern District of Georgia under § 1406. No request is made for a convenience transfer under § 1404(a).

II.  **Legal Standard**

A party may challenge venue by asserting that venue is improper in a responsive pleading or by filing a motion. Fed. R. Civ. P. 12(b)(3). A court may decide whether venue is proper based upon "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 449 (5th Cir. 2008)). Additionally, when resolving the matter on the pleadings, the Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco*, 570 F.3d at 237–38). Furthermore, "if the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2nd Cir. 2005); *accord Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) ("To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue."); *accord Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

In matters unique to patent law, Federal Circuit law—rather than the law of the regional circuit—applies. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (citing *Midwest Indus., Inc. v.*

*Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999)). "Section 1400(b) is unique to patent law, and 'constitute[s] the exclusive provision controlling venue in patent infringement proceedings' . . . ." *Id.* (quoting *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 1518 (2017)) (alterations in original). Thus, Federal Circuit law governs the analysis of what § 1400(b) requires. *Id.* Under § 1400(b), venue is proper based on (1) "where the defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For the former, a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S.Ct. at 1520.

For the latter, "Where a complaint alleges infringement, the allegations 'satisfy the acts of infringement requirement of § 1400(b)' 'although the allegations may be contested.'" *Seven Networks, LLC v. Google LLC*, 315 F.Supp.3d 933, 942 (E.D. Tex. 2017) (quoting *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F.Supp.3d 916, 928 (E.D. Va. 2017)). When determining whether a defendant "has a regular and established place of business," there are "three general requirements relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1360. Finally, "the Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

III. **Analysis**

As an initial matter, the parties dispute whether Arigna's filing of its SAC rendered moot Daimler's and Mercedes's pending motions to dismiss the FAC. This Court has consistently held that the filing of an amended complaint moots a motion to dismiss the previous complaint unless the amended complaint expressly incorporates the previous complaint. *Ultravision Techs., LLC v.*

*Eaton Corp. PLC,* Case No. 2:19-cv-00290-JRG, 2019 WL 11250161, at *1 (E.D. Tex. Nov. 7, 2019).

Here, Arigna's SAC did not expressly incorporate the FAC. Therefore, Arigna's filing of the SAC "moots a motion to dismiss the [FAC]." *Ultravision*, 2019 WL 11250161, at *1. Thus, both Daimler's motion to dismiss the FAC (Dkt. No. 90) and Mercedes's motion to dismiss the FAC (Dkt. No. 91) are moot. Because these motions are moot, the only issue before the Court is whether venue is proper as to Mercedes.[1]

Proceeding to venue, the parties do not dispute the "acts of infringement" requirement, nor whether Arigna met *Cray*'s first requirement, a physical place in the District. Dkt. No. 246 at 6. Additionally, both parties agree that Mercedes is a Delaware limited liability company and therefore resides outside the District. Dkt. No. 230 at 5. Thus, the issues between the parties regarding venue are whether: (1) the Dealerships are agents of Mercedes, (2) Mercedes has "established or ratified" the Dealerships as places of business of Mercedes, and (3) a facility located on the District's border serves as a basis for venue.

### A. Agency under *Cray*'s second requirement

This dispute between the parties falls under *Cray*'s second requirement: that the physical place located within the district be a regular and established place of business. *Cray*, 871 F.3d at 1360. For this requirement, "a regular and established place of business requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business." *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020)

---

[1] Daimler cannot contest venue because a foreign corporation is subject to venue in any judicial district in the United States. *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018). Instead, Daimler and Mercedes argue that venue must be proper as to all defendants and because it is not proper as to Mercedes, both should be dismissed. Dkt. No. 230 at 5. Because the Court finds that venue is proper as to Daimler and Mercedes, the Court need not address arguments concerning whether venue must be proper as to both defendants.

(internal quotation omitted). Here, Arigna alleges both that there are Mercedes employees regularly in the District and that the Dealerships are agents of Mercedes.

Arigna argues that Mercedes employees provide training to the Dealerships at the Dealerships' respective locations and that LinkedIn profiles show that employees are based in the District and regularly perform vehicle warranty inspection and repairs at the Dealerships. Dkt. No. 246 at 16. In response, Mercedes argues that Arigna has failed to show that these employees are "regularly" conducting Mercedes's business in the District. Dkt. No. 265 at 5. The declaration offered by Mercedes with its Reply glaringly does not address work performed at the dealerships by Mercedes employees. It addresses whether certain persons are currently employed by MBUSA and whether others are "assigned" to a facility outside the District. Dkt. No. 265-1. Likewise, the declaration in support of the opening brief does not even mention whether Mercedes employees work in the District in any way. Dkt. No. 230-1.

The Court finds that Arigna has made a *prima facie* showing to support its clear allegations that Mercedes employees are "regularly" conducting the business of Mercedes at the Dealerships. Mercedes has resisted discovery and not provided a persuasive response to these allegations. Furthermore, Arigna offers persuasive evidence that the Dealerships are agents for purposes of venue.

The concept of agency has been linked to patent venue for more than 100 years. *Google*, 949 F.3d at 1344. In 1897, Congress enacted a statute that contained a patent venue provision, which is now § 1400(b), and a service provision, which allowed service to be made on an agent of the defendant. *Id.* (citing 54 Cong. Ch. 395, 29 Stat. 695 (1897)). Because these two provisions were originally contained in the same statute, Congress "expressly linked" patent venue to agency via the service provision. *Id.* Furthermore, the legislative history confirms that "the 'main purpose'

of the statute was to 'give original jurisdiction to the court where a <u>permanent agency transacting the business</u> is located.'" *Id.* at 1345 (quoting 29 Cong. Rec. 1900 (1897)) (emphasis in original).

"An agency relationship is a 'fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'" *Id.* (quoting Restatement (Third) of Agency § 1.01). "The essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Id.* (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)) (alterations in original).

In *Google*, the Federal Circuit ultimately concluded that two internet service providers (ISPs) located in this District—Cable One and Suddenlink—were not agents of Google for the purposes of patent venue. *Id.* at 1347. This conclusion was based on three determinations: (1) Google did not have "interim control" over the ISPs; (2) the ISPs' installation of the Google Global Cache (GGC) servers were one-time events, thus not "regular"; and (3) the maintenance of the GGC servers, which was regular, was ancillary to Google's business, and thus the ISPs were not thereby conducting the business of Google. *Id.* at 1346.

For the first determination, respondent argued that the ISPs were agents of Google because the ISPs provided the GGC servers with network access. The Federal Circuit held this did not establish an agency relationship because Google had no right of "interim control" over the ISP's provision of network access. *Id.* (citing Restatement Third of Agency § 1.01 *cmt. f*.) ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.").

6

For the second determination, respondent argued that the ISPs were agents of Google because the contract between the ISPs and Google required the ISPs to "coordinat[e] with logistics and shipping personnel; inventory [] equipment received; unpack[] equipment; assembl[e] equipment based on information and instructions provided by Google; connect[] equipment to power strip(s) and Ethernet cable(s); and power[] up equipment & execut[e] installation scripts configuring IP address information." *Id*. Based on these installation provisions, the Federal Circuit held that "although these provisions may be suggestive of an agency relationship, . . . the installation activity does not constitute the conduct of a 'regular and established' business, since it is a one-time event for each server." *Id*.

For the third determination, the respondent argued that the ISPs were agents of Google because the ISPs provided on-going "basic maintenance activities" for the GGC servers. *Id.* The Federal Circuit held that these provisions failed to establish agency because "maintenance activities cannot, standing alone, be considered the conduct of Google's business" because "maintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id.* Thus, a plaintiff must show that the three essential elements of agency are met—most importantly that the principal has "interim control" over the agent's actions— and that the agent's actions are regular, *i.e.* not "a one-time event," and directed toward the "conduct of the [defendant's] business." *Id.*

Here, the Court finds that Arigna has made a *prima facie* showing that the Dealerships are agents of Mercedes for the purpose of venue. Beginning with the first essential element—interim control—Arigna argues that "Mercedes has the right to direct and control how each dealership carries out promoting, selling, and servicing Mercedes's products" through its contracts with the various Dealerships. Dkt. No. 246 at 17. Arigna argues that these "dealership contracts dictate

7

what the dealerships 'shall and shall not do,' and grant Mercedes 'the right to give interim instructions or directions to the dealerships once their relationship is established.'" Dkt. No. 246 at 17 (quoting Restatement (Third) of Agency § 1.01 *cmt. f.*). Arigna cites the following provisions as examples of Mercedes's interim control over the Dealerships:

- Dkt. 230-[2] at (ii) (Dealer must comply with "all reasonable requests of MBUSA with respect to the conducting of periodic due diligence reviews of the Dealer");
- *Id.* at 1 (Dealer must comply with "the prices and other terms of sale that MBUSA shall establish and revise from time to time");
- *Id.* at 4 (Dealer must "maintain in showroom ready condition at least the minimum inventory . . . that may be established by MBUSA from time to time");
- *Id.* at 5 (Dealer must "comply with any export policy established by MBUSA");
- *Id.* at 6 ("Dealer shall participate in program as specified by MBUSA for the sale of such vehicles, and shall maintain the minimum reasonable inventory established by MBUSA from time to time for such operations"; "MBUSA may alter or adjust Dealer's [Area of Influence] at any time");
- *Id.* at 7 (Mercedes pays Dealer for "all warranty repairs and policy service . . . in accordance with the procedures and at rates to be established from time to time by MBUSA");
- *Id.* at 8 ("Dealer agrees to perform service/recall campaign inspections . . . in accordance with MBUSA's directives and the applicable procedures in the Warranty Manual"); . . .
- *Id.* at 18 (Dealer must "maintain its financial books and records in accordance with the Mercedes-Benz Accounting Manual, as amended from time to time by MBUSA").

Dkt. No. 246 at 17-18.

In addition to these provisions, Arigna cites other "structural" provisions through which Mercedes asserts its control over the Dealerships, which include: "requiring its consent to change the ownership, name, identity, business organization or structure of any dealership"; "controlling their hours"; "evaluating their facilities"; "approving their business plans"; and "inspecting their premises, accounts, and records. . . ." Dkt. No. 246 at 18 (internal citations omitted).

Also, Arigna argues that "Mercedes 'retains the capacity throughout the relationship to assess the agent's performance, provide instruction to the agent, and terminate the agency relationship by revoking the agent's authority.'" *Id.* (quoting Restatement (Third) of Agency §

8

1.01 *cmt. f.*). This is shown by Mercedes's ability to review "Dealer's sales and marketing performance . . . based on such reasonable criteria as MBUSA may establish," Dkt. No. 230-2 at 6; to require "prompt corrective action, if required, to improve its performance," *id.*; and to terminate the Dealership for not satisfying the requirements under the agreement. *Id.* at 28.

Moving to the other two essential elements of agency, Arigna argues that these elements are met by the Dealer Agreement between Mercedes and each dealership. Dkt. No. 246 at 19. The Dealer Agreement, which provides the Dealerships with the "right to buy and resell Mercedes-Benz" and the Dealerships "accept[] such appointment . . . and agree[] to comply with all reasonable requests of [Mercedes]." *Id.* (quoting Dkt. No. 230-2 at (ii)). Thus, Argina essentially argues that, by Mercedes signing the Dealer Agreement, it manifests its consent to the Dealerships acting on its behalf and, by the Dealerships signing the Dealer Agreement, the Dealerships are consenting to act on Mercedes's behalf.

Mercedes responds by providing a declaration that states: "None of the [Dealerships are] an agent of MBUSA, nor do any of the [Dealerships] have the authority to bind MBUSA in any manner." Dkt. No. 230-1 at ¶ 9. Mercedes also argues that whether an agreement states it does not establish an agency relationship is "relevant to determining whether the parties consent to a relationship of agency." Dkt. No. 265 at 6 (quoting Restatement (Third) of Agency § 1.02 *cmt. b.*).

The Court finds that Arigna has identified sufficient undisputed facts to make a *prima facie* showing that the Dealerships are agents of Mercedes for the purposes of venue under § 1400(b). Beginning with interim control, Arigna cited provisions supporting the conclusion that Mercedes has the right "to give interim instructions or directions to the [Dealerships]." Restatement (Third) of Agency at § 1.01 *cmt. f.* The provisions show that Mercedes has the ability to control the location of the Dealerships within the District, the hours of operation of the various Dealerships, to set

9

minimum prices, to approve business plans, to prescribe and oversee the training of employees, and to dictate the steps those employees must take to complete tasks.

Furthermore, Mercedes has failed to argue how the provisions cited by Arigna do not show Mercedes's interim control. Instead, Mercedes argues that the agreements disavow agency and relies on general statements. As to the provision disavowing agency, it is relevant to the issue of agency, but it is not controlling on the issue and it does not contradict the provisions Arigna cites to support its *prima facie* case.[2] As to the declaration, it also fails to specifically address the provisions cited by Arigna. Thus, these facts are undisputed evidence in the record regarding venue. *Ambraco,* 570 F.3d at 238.

The Court further finds that the other requirements for agency are met. The Court agrees with Arigna that the Dealer Agreements constitute Mercedes' manifestation of consent for the Dealerships to act on its behalf and the Dealerships consent to do so. Furthermore, the Dealerships are unlike the ISPs in *Google* because the selling of Mercedes-Benz vehicles is both a regular act by the Dealerships and is central to, rather than "ancillary to," Mercedes's business.

Two final notes, first, given the various legal issues related to agency, the Court emphasizes that it is not finding that the Dealerships are agents of Mercedes for every legal context, but rather the Court only finds that the Dealerships are agents of Mercedes for the issue of establishing venue under § 1400(b) as interpreted by *Cray* and *Google*. As the Restatement makes clear, "Aspects of an overall relationship may constitute agency and entail its legal consequences while other aspects do not."[3]

---

[2] "Although agency is a consensual relationship, how the parties to any given relationship label it is not dispositive." Restatement (Third) of Agency § 1.01.
[3] Restatement (Third) of Agency § 1.01.

Second, the Court's finding that the Dealerships are agents of Mercedes is in line with the "main purpose" of § 1400(b), which is to allow suit in a district where a "permanent agency transacting the business [of the defendant] is located." *Google*, 949 F.3d at 1345. It is clear from the various agreements that the Dealerships are transacting the business of Mercedes—*i.e.* selling and servicing Mercedes-Benz vehicles—in the District. Therefore, the Court's finding is not broadening the scope of § 1400(b), but rather the finding shows that the agency relationship between the Dealerships and Mercedes is the "permanent agency" which § 1400(b) was intended to include. In sum, the Court finds that Arigna has put forth enough undisputed facts to make its *prima facie* showing that the Dealerships are agents of Mercedes for the purposes of venue and thus, Arigna has satisfied *Cray*'s second requirement even without relying upon its *prima facie* showing that Mercedes employees regularly conduct business at the Dealerships.

### B. Established or Ratified under *Cray*'s third requirement

"Finally, the third requirement when determining venue is that 'the regular and established place of business' must be 'the place of the defendant.'" *Cray*, 871 F.3d at 1363. "Thus, the defendant must establish or ratify the place of business." *Id.* When determining establishment or ratification, the Court considers "whether the defendant owns or leases the place"; "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; or "exercises other attributes of possession or control over the place." *Id.*

Additionally, "marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.* Furthermore, when considering the defendant's representations that it has a place of business in the district, "potentially relevant inquiries include whether the defendant lists the alleged place of business on

11

a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id.* at 1363-64. But advertising alone is not sufficient. *Id.* at 1364. Furthermore, "a 'place of business' is not restricted to real property that the defendant must 'own or lease,' and that [§ 1400(b)] could be satisfied by any physical place that the defendant could 'possess or control.'" *Google*, 949 F.3d at 1343 (quoting *Cray*, 871 F.3d at 1363).

Here, the Court finds that Mercedes ratified the Dealership locations as places of business of Mercedes. Although Arigna argues that Mercedes both established and ratified the Dealerships, the evidence shows that Mercedes did not establish the locations, but rather the Dealerships established their locations after receiving permission from Mercedes. *See Cray*, 871 F.3d at 1365-66. However, Arigna's arguments regarding Mercedes's establishment of the Dealerships also support its ratification argument.

For ratification, Mercedes's ratification argument centers on *Andra Group, LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283 (Fed. Cir. 2021). Mercedes argues that this case is controlling on the issue of ratification and, because Mercedes is like the defendants in *Andra*, the Court should dismiss for improper venue. In *Andra*, the plaintiff sued four related companies: L Brands, Inc., Victoria's Secret Direct Brand Management, LLC, and Victoria's Secret Stores Brand Management (collectively, the "Non-Store Defendants") and Victoria's Secret Stores, LLC ("Stores"). *Id.* at 1285-86. The defendants moved to dismiss for improper venue and plaintiff argued that the Non-Store Defendants, who were allegedly infringing, ratified the Stores physical locations as the Non-Store Defendants' places of business. *Id.* at 1286.

Ultimately, the Federal Circuit found, in part, that the Non-Store Defendants did not ratify the Stores physical locations as places of the Non-Store Defendants. *Id.* at 1290. To reach this conclusion, the Federal Circuit found that plaintiff "has not shown that the Non-Store Defendants

12

actually engage in business at Stores locations" and "the fact that the entities work together in some aspects . . . is insufficient to show ratification." *Id.* at 1289-90 (internal citations omitted). Additionally, the Federal Circuit found that:

> Several additional factors weigh against a finding of ratification here. The Non-Store defendants do not own or lease Stores locations . . . . The Victoria's Secret website's "Find a Store" feature points consumers to Stores locations, not Non-Store Defendants locations. The Non-Store Defendants do not display their corporate names in the retail locations. Non-Store Defendants carry out different business functions than Stores. And the companies' shared use of "Victoria's Secret" in their name does not detract from the separateness of their businesses . . .

*Id.* at 1289-90 (internal citation omitted).

Citing *Andra*, Mercedes makes two arguments: (1) under *Andra*, "the places of business cannot be imputed to MBUSA for venue because they are independent business entities" and (2) all the reasons the Federal Circuit found ratification did not apply in *Andra* are also present here. As to the first argument, the Court agrees with Mercedes: "where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Id.* at 1289. The Court finds no evidence that Mercedes and the Dealerships have not maintained corporate separateness and does not impute the location of the Dealerships to Mercedes.

However, imputation is not the issue here, *ratification* is. As to ratification, Mercedes states that it "does not engage in business from the dealerships' facilities"; "does not even indirectly own the dealerships"; "has also never [held] out any dealership within this District as its own place of business"; "does not display its corporate name 'Mercedes-Benz USA, LLC' in the dealerships' locations"; "does not design dealers' facilities"; "carries out different business functions than the dealerships"; "dealers . . . build their own facilities"; and "has no right to take over the dealership." Dkt. No. 230 at 9-10.

13

Additionally, Mercedes argues that ratification is not present because the websites of dealerships in this District "provide clear notice that they are owned and operated by entities other than MBUSA." *Id.* at 8. Mercedes further argues that "while customers may use [its] website to search vehicle inventory at third-party dealerships, the offering for sale and sale of vehicles is done by the third-party dealerships, which independently control final pricing and ultimate sale of Mercedes-Benz vehicles." Dkt. No. 230 at 13 (citing Dkt. Nos. 230-8 at p.5; 230-9).

The Court finds that some of the factors identified in *Andra* do weigh against ratification. There is no evidence that Mercedes owns the dealerships, or that the Dealerships display "Mercedes-Benz *USA, LLC*" in the retail space at the Dealerships. Thus, these weigh against a finding of ratification.

However, the remaining factors identified in *Cray* and *Andra* weigh in favor of finding ratification. First, Arigna alleged that Mercedes was doing business at the Dealerships in the SAC, *e.g.* Dkt. No. 182 at ¶ 38, and Mercedes never directly denies it is doing business at the Dealerships in its declaration. It is undisputed that Mercedes maintains employees in the District[4] and that they visit Dealerships often. The record shows that Mercedes is doing business at the Dealership locations.[5]

Relatedly, the Court finds unpersuasive the argument by Mercedes that it and the Dealerships "carry out different business functions," Dkt. No. 230 at 9. In Mercedes's response, it cites the following language from its declaration to support its "different business functions" argument: "[Mercedes] offers to sell and sells vehicles to the Eastern District Dealers . . . ." Dkt.

---

[4] Dkt. No. 265-1.
[5] Mercedes's Dealer Agreement provides "Dealer shall prepare, keep current and retain records in support of requests for reimbursement for warranty and policy work performed by Dealer in accordance with the Warranty Manual." Dkt. No. 230-1 at 18. Under Texas state law, this is doing busines. Tex. Occ. Code § 2301.251(c) ("A manufacturer or distributor that directly or indirectly reimburses another person to perform warranty repair services on a vehicle is engaged in business in this state regardless of whether the manufacturer sells or offers for sale new motor vehicles in this state.").

No. 230-1 at ¶ 7. This does not show Mercedes and the Dealerships are like the defendants in *Andra*, who all clearly performed different roles. *See Andra*, 6 F.4th at 1286 ("L Brands, Inc. (LBI) is the corporate parent of several retailers . . . Victoria's Secret Stores, LLC (Stores) operates the physical Victoria's Secret stores; (2) Victoria's Secret Direct Brand Management, LLC (Direct) manages the victoriassecret.com website and the Victoria's Secret mobile application; and (3) Victoria's Secret Stores Brand Management, Inc. (Brand) creates Victoria's Secret branded intimate apparel and beauty products."). The evidence in the record shows that both Mercedes and the Dealerships carry out the same business function, which is to sell their cars to the public. This factor weighs in favor of ratification.

Next, the Court finds that although the Dealerships may design and build their facilities, all the buildings are subject to the requirements incorporated into the Dealer Agreement. Mercedes requires the Dealerships to "satisfy all applicable provisions of this Agreement, including the facility, space, appearance, layout, equipment and corporate identification requirements in the Dealer AOI Space Analysis Addendum, and Dealership Facility Planning & Corporate Identification Manual." Dkt. No. 230-1 at (iii). Because Dealerships cannot deviate from Mercedes's requirements, the Court finds Mercedes effectively controls the design of the Dealerships' facilities. Thus, this factor also weighs in favor of ratification.

Next, the Court agrees that there is no evidence that shows Mercedes "has [a] right to take over the dealership" in the event of termination, but the Dealer Agreement does give Mercedes rights to the dealership's property in the event of termination. Dkt. No. 230-1 at 29-30. Specifically, Mercedes reserves the right to purchase, at a pre-determined price, all the Mercedes-Benz vehicles, Mercedes-Benz vehicle parts, specialized tools, and "[s]igns that [Mercedes] has recommended for identification of Dealer." *Id.* Thus, this factor weighs in favor of ratification.

As to the website, Mercedes's declaration acknowledges that its website lists "available vehicle inventory at the [Dealerships]." Dkt. No. 230-1 at ¶ 15. Thus, Mercedes's websites is distinguishable from the *Andra* defendants' website (which merely listed locations) because the Mercedes website actively directs consumers to particular Dealerships based on the car the consumer wishes to buy. *E.g.* Dkt. No. 230-8. Thus, this factor weights in favor of ratification.

Arigna further shows how factors identified in *Cray* favor ratification. Arigna argues that Mercedes's marketing and advertising supports ratification. Dkt No. 246 at 13. Mercedes's Dealer Agreement requires the Dealerships to "advertise and merchandise Mercedes-Benz Passenger Car Products, and use current Mercedes-Benz showroom displays, sales materials, other promotional media, and electronic mediums including dealer website and use of social media applications." Dkt. No. 230-2 at 4-5. The Court finds that requiring the Dealerships to advertise and to use Mercedes's marketing materials weighs in favor of ratification of their locations as places of Mercedes.

Next, Arigna argues that "Mercedes also requires each Dealership to 'store[] inventory,' 'conduct[] demonstrations,' and store 'materials . . . so that they can be distributed or sold from the place.'" Dkt. No. 246 at 9 (quoting *Cray*, 871 F.3d at 1365). Arigna cites the following provisions to supports its argument:

- Dkt. 230-2 at 4 (Dealer "shall . . . maintain in showroom ready condition at least the minimum inventory of Mercedes-Benz Passenger Cars that may be established by MBUSA from time to time");
- *id*. at 4-5 (shall "use current Mercedes-Benz showroom displays, sales materials, other promotional media");
- *id*. at 11 (shall "maintain its part stock at minimum stocking and service levels");
- *id.* at 17 (shall provide "any owner's manual, warranty booklet or other owner information which MBUSA or [Daimler AG] may provide to Dealer for delivery with such Mercedes-Benz")

Dkt. No. 246 at 9-10.

16

Arigna also shows that Mercedes requires the Dealerships to display Mercedes-Benz logos in a specific manner. "the 'signage on, about, or relating to' each dealer 'associates the space as belonging to Mercedes.'" Dkt. No. 246 at 12 (quoting *ZTE*, 890 F.3d at 1015; *accord Cray*, 871 F.3d at 1363-64). Specifically, Arigna points to the provisions requiring the Dealerships "to erect, display and maintain . . . such standard authorized product and service signs and other corporate identity elements as are specified in the Dealership Facility Planning & Corporate Identification Manual. . . ." Dkt. No. 230-2 at 15. Mercedes's declaration acknowledges that it requires the Dealerships to display the term "Mercedes-Benz" in a specific manner and that their signage must comply with its requirements. Dkt. No. 230-1 at ¶ 12. Although Mercedes cites *Andra*'s statement that "the [defendants'] shared use of 'Victoria's Secret' in their name does not detract from the separateness of their businesses," *Andra*, 6 F.4th at 1290, Arigna is not arguing that the Dealerships and Mercedes are not separate. Instead, Arigna simply argues that Mercedes requires the Dealerships to display certain Mercedes logos on the physical facilities, which is a relevant factor under *Cray*. Mercedes does not refute that it requires signate on the Dealership's buildings. This factor also weighs in favor of ratification.

Finally, Arigna argues that Mercedes also exercises "attributes of possession or control" over the Dealerships' physical locations. First, Arigna argues that Mercedes controls the location from which Dealerships may build and conduct their business: The Dealer Agreement shows that Mercedes "approves the location(s) of the Dealership Facilities," Dkt. No. 230-2 at (ii), and requires each dealership to "conduct its Dealership Operations only from the Approved Location(s)." *Id.* at 14. Arigna further argues that Mercedes maintains control over Dealership's physical location by requiring the dealership to seek approval to: (a) "move, relocate or change the designated usage or function of the Approved Location(s) or any of the Dealership Facilities"; (b)

17

"substantially modify any of the Dealership Facilities"; or (c) "establish or operate any other locations or facilities . . . ." Dkt. No. 230-2 at 14. Failure to seek prior written approval could result in termination of the Dealer Agreement. Dkt. No. 210-2 at 25-26. These provisions show that the agreement between Mercedes and each dealer is likely conditioned "on [the Dealerships'] continued residence in the district," *Cray*, 871 F.3d at 1363, but at a minimum, these provisions clearly show that Mercedes retained "attributes of possession or control" over the Dealerships' location. *Id.* Thus, this factor also weighs in favor of ratification.

Thus, giving "reasoned consideration to all relevant factors or attributes of the relationship," *Andra*, 6 F.4th at 1290, the Court finds that a majority of the above factors weigh in favor of ratification. Therefore, the Court finds that Arigna has made a *prima facie* showing that Mercedes has ratified the Dealerships as places of business of Mercedes in the District.

Mercedes remaining arguments are unpersuasive. Mercedes argues that Texas state law precludes it from owning or operating the Dealerships and for that reasons, venue is improper in the District. Dkt. No. 230 at 7 (citing Tex. Occ. Code § 2301.476(c)(1)-(3)). That argument misses the point since ratification assumes that Mercedes does not own or operate the dealerships.

Next, Mercedes seeks to restrict *Cray* to apply only in the context of whether a corporation has ratified an employee's home as its place of business. Dkt. No. 265 at 2. However, the Federal Circuit has applied the ratification factors from *Cray* in the context of whether one corporation has ratified the location of another corporation. This was the case in *Andra*, which Mercedes relies on to support its ratification argument.

*ZTE* also applied the ratification factors in the context of two separate corporate entities. *ZTE* addressed whether a call center—which was maintained by one corporation—could be a place of business of the petitioner, which was a separate corporate entity. *ZTE*, 890 F.3d at 1010. After

establishing that the burden to show venue is the plaintiff's, the Federal Circuit directed the district court to consider the ratification factors outlined in *Cray* on remand. *See id.* at 1015-16 (directing the district court to consider whether ZTE "possesses, owns, leases, or rents the office space for the call center or owns any of the equipment located there"; "whether any signage on, about, or relating to the call center associates the space as belonging to ZTE"; "whether the location of the call center was specified by ZTE"; and "whether [call center] would need permission from ZTE [] to move its call center outside of the [District]"). Thus, it is clear to the Court that imputation and ratification are distinct legal concepts and that the ratification factors outlined in *Cray* apply in the context of whether one corporation ratified another corporation's locations as its places of business.

### C. Arigna's remaining argument

In addition to arguing that the Dealerships serve as a proper basis for venue, Arigna argues that Mercedes maintains a facility in Denton County, which is in the District. Dkt. No. 246 at 6-7. Mercedes responds by arguing the facility is not in the District and that the facility is owned and operated by a different Mercedes affiliate. Dkt. No. 265 at 1. While the Court finds that Arigna has carried its burden to show that this facility is located in the District, the record does not contain sufficient evidence for the Court to determine whether it is operated by Mercedes itself or an agent of Mercedes, as opposed to a non-agent affiliate.

## IV. Conclusion

The Court finds that Arigna has carried its burden to make a *prima facie* showing that the Dealerships are places of business of Mercedes. Therefore, the Court finds that Mercedes has regular and established places of business in the District and that venue is proper as to Mercedes

and Daimler in this District under § 1400 (b). Accordingly, it is recommended that the first two motions (Dkt. Nos. **90, 91**) be **denied as moot**, and that the third motion (Dkt. No. **230**) be **denied**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 20th day of January, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE